✓ FILED ___ LODGED
___ RECEIVED ___ COPY

2016 AUG 10 P 3:30

CLERK US DISTRICT COURT
DISTRICT OF ARIZONA

JOHN S. LEONARDO
United States Attorney
District of Arizona
MICHAEL JETTE
Assistant U.S. Attorney
State Bar No. 021843
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: Michael.jette@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

VICTIM

CR16-1562 TUC
RM (JR)

| United States of America, | INDICTMENT |
|---|---|
| Plaintiff, | |
| vs. | Violations: |
| | 18 U.S.C. §1349: Conspiracy to Commit Wire Fraud<br>Count 1 |
| PETER CASH DOYE | |
| | 18 U.S.C. § 1343: Wire Fraud<br>Counts 2 - 16 |
| Defendant. | |
| | 18 U.S.C. § 1956(h): Conspiracy to Commit Money Laundering<br>Count 17 |
| | 18 U.S.C. §§ 981 and 982: Forfeiture |

**THE GRAND JURY CHARGES:**

<u>Introduction and Scheme to Defraud</u>

At all relevant times in this indictment, the following facts are alleged:

1. Courtland Gettel was the Chief Executive Officer of Variant Holding Entity, LLC, (Variant) a Delaware Limited Liability Entity with business offices located in San Diego, California and Tucson, Arizona. PETER CASH DOYE, the defendant in this case, was the Senior Managing Director of Variant, among other titles used. Jeffrey Greenberg was inside counsel for Variant. Variant was/is a Delaware commercial real estate investment limited liability entity organized in 2013.

2. On or around September 13, 2013, Courtland Gettel and PETER CASH DOYE,

through Variant, entered into a loan agreement for $65 million with Doral Property Finance (Doral) to acquire and renovate commercial properties.

3. On or around October 11, 2013, Courtland Gettel and PETER CASH DOYE, through Variant, entered into an amended financing contract for $73.5 million with BPC VIII, L.P. Beach Point Total Return Master Fund, L.P. and Beach Point Distressed Master Fund L.P. (collectively referred to as Beach Point) to buy and refinance commercial properties and membership interests.

4. The commercial properties purchased under the Doral Bank loan agreement and Beach Point financing contract was the H14 Portfolio (H14). The FX3 Portfolio (FX3) and other miscellaneous properties including NC Storage, LLC were used as security.

5. Courtland Gettel, Jeffrey Greenberg, and PETER CASH DOYE, however, failed to make payments required under the Beach Point financing contract. On May 7, 2014, Beach Point revoked the financing contract and demanded full payment.

6. Courtland Gettel, Jeffrey Greenberg, and PETER CASH DOYE with the intent to defraud, knowingly participated in a scheme to defraud Beach Point relating to Beach Point's financing contract between approximately September 2013 and June 2014. PETER CASH DOYE and his co-schemers participated in the scheme to obtain money derived from their scheme to defraud and through use of material false representations and the intentional concealment of material facts.

7. Under the terms of the contracts, Courtland Gettel, Jeffrey Greenberg, and PETER CASH DOYE were required to refurbish, repair, or restore the properties and sell them at a later date. Courtland Gettel, Jeffrey Greenberg, and PETER CASH DOYE, either themselves or by instructing their employees, created shell entities. PETER CASH DOYE, together with his co-schemers, used these shell and preexisting entities to submit fraudulent invoices to Doral. Believing these invoices were accurate and true, Doral paid PETER CASH DOYE and his co-schemers money for repair and restoration work not performed by these entities.

8. After receiving the fraudulent invoices, Doral would generally wire transfer in interstate commerce the fraudulently obtained proceeds into bank accounts under the control of PETER CASH DOYE and his fellow co-schemers.

9. Additionally, during the sale of several properties either purchased or secured under the contracts, Courtland Gettel, Jeffrey Greenberg, and PETER CASH DOYE falsely represented to escrow that various services for property management, marketing, and accounting/financing work were legitimate and had been completed. In reality, these expenses were fraudulent and the work was never completed. These fraudulent representations were submitted by PETER CASH DOYE and his co-schemers to escrow for payment processing. The escrow agency, including Landmark Title Agency, would thereafter transfer money in escrow generally in interstate commerce to bank accounts controlled by PETER CASH DOYE and his fellow co-schemers at the closing of these transactions.

## FRAUDULENT INVOICES

10. On May 3, 2013, Apartment Consulting & Renovations, LLC was organized. Beginning October 7, 2013, Apartment Consulting & Renovations, LLC, through PETER CASH DOYE and his co-schemers, submitted approximately $3,563,291 in fraudulent invoices to Doral for refurbish, repair, and restoration work that was never completed. Between December 2013 and January 2014, Doral paid money for the "work" described in the fraudulent invoices to PETER CASH DOYE and his co-schemers. Courtland Gettel, Jeffrey Greenberg, and PETER CASH DOYE used Apartment Consulting & Renovations, LLC, a shell entity, to divert the fraudulently obtained proceeds to themselves.

11. On November 12, 2013, another entity, Texas Rehab Specialist, LLC was organized. Beginning on November 19, 2013, Texas Rehab Specialist, LLC, through PETER CASH DOYE and his co-schemers, submitted approximately $2,909,278 in fraudulent invoices to Doral for refurbish, repair, or restoration work that was never completed. Between December 2013 and January 2014, Doral paid

money for the "work" described in the fraudulent invoices to PETER CASH DOYE and his co-schemers. Courtland Gettel, Jeffrey Greenberg, and PETER CASH DOYE used Texas Rehab Specialist, LLC, a shell entity, to divert the fraudulently obtained proceeds to themselves.

12. By funneling cash otherwise intended to fund capital expenditures, Courtland Gettel, Jeffrey Greenberg, and PETER CASH DOYE allowed many of the properties to slip further into a state of disrepair.

## FRAUDULENT ESCROW EXPENSES

13. Courtland Gettel, Jeffrey Greenberg, and PETER CASH DOYE sold some of the properties. Pursuant to the Beach Point financing contract, Beach Point would receive all net proceeds, less legitimate expenses from the sale of these properties. However, PETER CASH DOYE and his co-schemers failed to disclose to Beach Point the sale of some of the properties until after the sale of the properties. Courtland Gettel, Jeffrey Greenberg, and PETER CASH DOYE used shell and preexisting entities to submit fraudulent expenses in order to receive payment through the escrow accounts from the sale of the properties. PETER CASH DOYE and his co-schemers submitted fraudulent third party expenses to Landmark Title and other title agencies including fraudulent expenses from Belleau Wood, Helena, LLC, The Waterfall Group, San Marin Apts., Cajun Capital, and Sui Generis. These fraudulent expenses were submitted by PETER CASH DOYE and his co-schemers in order to divert the fraudulently obtained proceeds received through the escrow account for their own personal use. The settlement statements for these real estate closing transactions falsely represented that various expenses had been incurred in connection with the sale of the properties. However, none of these entities, including Belleau Wood, Helena, LLC, The Waterfall Group, San Marin Apts., Cajun Capital, and Sui Generis, performed any work claimed on the settlement statements.

14. **Remington Oaks Apartments**: On or around October 2013, pursuant to Beach Point's request, PETER CASH DOYE emailed the Remington Oaks Apartments

settlement statement to Beach Point indicating Courtland Gettel, Jeffrey Greenberg, and PETER CASH DOYE had sold Remington Oaks Apartments for approximately $23 million. The settlement statement represented that payments were made to the following entities:

    Belleau Wood                    $345,000

    Helena, LLC                     $255,000

15. In reality, the above "expense" payments to these entities were fraudulent as there had been no work performed by these entities in connection with the sale of the property.

16. <u>Pecan Crossing Apartments</u>: On or around November 2013, Courtland Gettel, Jeffrey Greenberg, and PETER CASH DOYE sold Pecan Crossing Apartments for approximately $10.4 million. Pursuant to Beach Point's request, the settlement statement represented that payment was made to the following entity:

    The Waterfall Group         $260,000

17. In reality, the above "expense" payment to this entity was fraudulent as there had been no work performed by this entity in connection with the sale of the property.

18. On or around February 2014, Beach Point discovered Courtland Gettel, Jeffrey Greenberg, and PETER CASH DOYE had sold two more assets. One of these assets was a group of storage facilities located in North Carolina and South Carolina (NC Storage). The other asset was San Marin Apartments (San Marin) located in Tampa, Florida. Upon discovering the sale of these two assets, Beach Point contacted PETER CASH DOYE and requested the settlement statements documenting the proceeds from the two sales.

19. <u>NC Storage</u>: On or around February 11, 2014, PETER CASH DOYE emailed Beach Point the settlement statement for NC Storage. According to the settlement statement, NC Storage was sold on or around December 13, 2013 for $21 million. The settlement statement represented that payments were made to the following entities:

|  |  |
|---|---|
| The Waterfall Group | $1,176,000 |
| Title Security Exchange, LLC (dba Leverage Exchange Group, LLC) | $6,145,338 |

20. <u>San Marin Apartments</u>: On or around February 11, 2014, PETER CASH DOYE emailed Beach Point the settlement statement for San Marin Apartments. According to the settlement statement, the San Marin Apartments was sold on or around February 1, 2014 for $9 million. The settlement statement represented that payments were made to the following entities:

|  |  |
|---|---|
| San Marin Apts | $1,442,836 |
| Cajun Capital | $1,139,653 |
| Sui Generis | $584,602 |
| The Waterfall Group | $540,000 |

21. In reality, the above "expense" payments to these entities were fraudulent as there had been no work performed by these entities in connection with the sale of the properties.

22. For the purposes of executing the scheme to defraud, and attempting to do so, PETER CASH DOYE and his co-schemers knowingly caused to be submitted by means of wire communications in interstate commerce signals and sounds, that is various banking wire transfers as an essential part and in furtherance of the scheme to defraud. Additionally, PETER CASH DOYE and his fellow co-schemers knowingly caused to be submitted various e-mails in interstate commerce that were used to disguise and further conceal the nature of their scheme to defraud.

### Count 1
### Conspiracy to Commit Wire Fraud
### [Title 18 U.S.C. §1349]

23. The factual allegations in paragraphs 1 through 22 of this indictment are re-alleged and incorporated by reference as if fully set forth herein.

24. From on or about January, 2013, and continuing through on or about December, 2015, in the District of Arizona and elsewhere, the defendant PETER CASH DOYE conspired, confederated and agreed with Courtland Gettel, Jeffrey Greenberg, and others both known and unknown to the Grand Jury to commit an offense against the United States of America, that is to commit Wire Fraud in violation of Title 18 U.S.C. §1343, by unlawfully obtaining fraudulent proceeds through the scheme to defraud described in paragraphs 1 through 22 of this indictment.

### The Purpose of the Conspiracy

25. The purpose of the conspiracy was for the defendants to unlawfully enrich themselves by obtaining sale and expense proceeds derived from the defendants' scheme to defraud, all in violation of Title 18, U.S.C. §1349, Conspiracy to Commit Wire Fraud.

### Counts 2 – 16
### Wire Fraud
### [Title 18 U.S.C. §1343]

26. The factual allegations in paragraphs 1 through 22 of this indictment are re-alleged and incorporated by reference as if fully set forth herein.

27. PETER CASH DOYE and his co-schemers knowingly and willfully participated in, devised, and intended to devise, a scheme and artifice to defraud to obtain money as set forth in paragraphs 1 through 22 of the indictment, and to obtain money through the use of material false and materially fraudulent pretenses, statements, representations, promises and by the intentional concealment and omission of material facts.

### Execution of the Scheme by Wire Communications

28. On the dates alleged below, in the District of Arizona and elsewhere, the defendant, PETER CASH DOYE and his co-schemers, for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do so, did knowingly transmit and cause to be transmitted by means of wire communication in interstate commerce signals and sounds, to wit: wire transfers in the amounts and dates set out below the monies being the fraudulently obtained proceeds derived through the scheme to defraud:

| Count | On or about | Amount | Receiving Entity/Account | Property |
| --- | --- | --- | --- | --- |
| 2 | 10/10/13 | $345,000 | Belleau Wood/WF #9694 | Remington Oaks |
| 3 | 10/21/13 | $255,000 | Helena, LLC/JPMC #8601 | Remington Oaks |
| 4 | 11/27/13 | $260,000 | The Waterfall Group/ Northern Trust #6021 | Pecan Crossing |
| 5 | 12/16/13 | $6,145,338 | Title Security Exchange LLC dba Leverage Exchange Group LLC/ Western Alliance #3738 | NC Storage |
| 6 | 12/16/13 | $1,176,000 | The Waterfall Group/ Northern Trust #6021 | NC Storage |
| 7 | 01/31/14 | $927,730 | San Marin Apts/WF #7643 | San Marin Apts. |
| 8 | 01/31/14 | $515,106 | San Marin Apts/WF #7643 | San Marin Apts. |
| 9 | 01/31/14 | $540,000 | The Waterfall Group/ Northern Trust #6021 | San Marin Apts. |
| 10 | 01/31/14 | $584,602 | Sui Generis/JPMC #8980 | San Marin Apts. |
| 11 | 01/31/14 | $693,596 | Cajun Capital LLC/JPMC #3673 | San Marin Apts. |
| 12 | 02/04/14 | $446,057 | Cajun Capital LLC/ JPMC #3673 | San Marin Apts. |
| 13 | 12/10/13 | $2,211,999 | Texs Rehab Specialist/ JPMC #9531 | Various properties |
| 14 | 01/06/14 | $697,279 | Texs Rehab Specialist/ JPMC #9531 | Various properties |

| 15 | 12/10/13 | $2,037,986 | Apartment C&R/ JPMC #6101 | Various properties |
| 16 | 01/06/14 | $1,525,305 | Apartment C&R/ JPMC #6101 | Various properties |

All in violation of Title 18, United States Code, Section 1343.

## Count 17
### Conspiracy to Commit Money Laundering
[Title 18 U.S.C. §1956(h)]

29. The factual allegations in paragraphs 1 through 22 of this indictment are re-alleged and incorporated by reference as if fully set forth herein.

30. From on or about January, 2013, and continuing through on or about December, 2015, in the District of Arizona and elsewhere, the defendant PETER CASH DOYE conspired, confederated and agreed with Courtland Gettel, Jeffrey Greenberg, and others both known and unknown to the Grand Jury, to commit the following offense against the United States: Transactional money laundering in violation of Title 18, United States Code, §1957.

### The Purpose of the Conspiracy

31. The manner and means employed by PETER CASH DOYE and his fellow co-schemers to carry out the object of the conspiracy were as follows: After the money and funds were received from the fraudulently obtained wire fraud transactions set forth in Counts 2 – 16, portions of the fraudulently obtained funds were deposited and wired into other associated bank accounts of PETER CASH DOYE and his co-schemers. PETER CASH DOYE and his co-schemers knew that the money and funds received from the fraudulent invoices and escrow expenses were proceeds of an unlawful activity; specifically, violations of 18 U.S.C. §1343 (Wire Fraud). PETER CASH DOYE and his co-schemers subsequently conducted monetary transactions with these funds knowing that the money and funds received from the wire transactions represented the criminally derived proceeds from unlawful activities. The money and funds from these criminally derived activities were used by PETER CASH DOYE and the co-schemers to engage in monetary transactions

affecting interstate commerce in criminally derived property of a value of greater than $10,000.00 in violation of 18 U.S.C. §1957. All in violation of Title 18 U.S.C. §§1956(h).

## FORFEITURE ALLEGATION

32. Upon conviction of the offenses set forth in Counts 1 - 17 of this Indictment, the defendant, PETER CASH DOYE, shall forfeit to the United States of America, pursuant to:

   a) Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to offenses of Title 18, United States Code, Sections 1343, 1349 and 1956(h);

   b) Title 18, United States Code, Section 982(a)(2)(A), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of violations of Title 18, United States Code, Section 1343; and

   c) Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in an offense of Title 18, United States Code, Section 1956(h), or any property traceable to such property.

The property to be forfeited includes, but is not limited to: a sum of money equal to the amount of proceeds obtained as a result of the offenses, including but not limited to $18,360,999 in U.S. currency.

If any of the property described above, as a result of any act or omission of the defendant: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of

the above forfeitable property, including, but not limited to, all property, both real and personal, owned by the defendant.

A TRUE BILL

/S/
―――――――――――――
Presiding Juror

JOHN S. LEONARDO
United States Attorney
District of Arizona

/S/

Assistant U.S. Attorney

**AUG 1 0 2016**

REDACTED FOR
PUBLIC DISCLOSURE

- 11 -